Matter of Joseph L. (2004 NY Slip Op 50873(U))

[*1]

Matter of Joseph L.

2004 NY Slip Op 50873(U)

Decided on June 7, 2004

Family Court, Richmond County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 7, 2004

Family Court, Richmond County
In the Matter of Joseph L. and Amber L. Children Under Eighteen Years of Age Alleged to be Neglected by Grace L., Respondent.
NN-XXX/XX

Ralph J. Porzio, J.
On January 23, 2004 Petitioner, Administration for Children's Services (hereinafter referred to as ACS) brought this petition against the Respondent, Grace L., (hereinafter referred to as the Respondent) alleging that her two year old twins, Joseph L. and Amber L., were neglected or are in danger of being neglected due to the death of their sibling R.
 FACTS
On January 20, 2004 at approximately 5:30 p.m. the child Ryan L., age ten months old, ingested the prescription medicine Tiazic. At approximately 11:13 p.m. Ryan L. was brought to the emergency room of Staten Island University Hospital by the non-respondent father. Ryan L. died the morning of January 21, 2004.
Doctor Stephen de Roux, Deputy Chief Medical Examiner of Richmond County, qualified as an expert in the field of forensic pathology, testified that on January 22, 2004 he conducted an autopsy of the child Ryan L. Dr. de Roux testified that the child died from acute Diltiazem poisoning. Diltiazem, a calcium channel blocker, is a high blood pressure medication. One of the trade names for Diltiazem is Tiazic. Dr. de Roux testified that the child had orally ingested a large amount of the medication and that the child died as a result.
Peter Maresca, an ACS caseworker, testified that he had spoken with the Respondent on January 21, 2004 and she detailed the events of January 20, 2004. At approximately 5:30 p.m. the Respondent was watching the children (Joseph L., Amber L. and Ryan L.) at the maternal grandmother's home. The Respondent left the room to use the bathroom. When the Respondent returned, the child Joseph L. had the maternal grandmother's pill bottle in his hand, Amber L. had a pill in her hand and Ryan L. was close by on the floor. There was an open pill on the floor that appeared to be chewed and dented. The Respondent advised that she and the maternal grandmother cleaned up the pills and looked in the child's mouth. They did not see anything and the child appeared to be fine. The father was not present.
The Respondent further recounted the events to Mr. Maresca advising that the family (the father, the Respondent and the children) returned home at approximately 8:00 p.m. The Respondent telephoned the pediatrician who advised her to call poison control. The Respondent stated that [*2]poison control told her to monitor the child. Shortly thereafter the Respondent informed the father what had happened and he checked on the child. The father found Ryan L. vomiting and convulsing. The child was then rushed to the hospital.
Ms. Donna Vardakis, a poison control specialist employed by the New York City Department of Health Poison Control Center, testified. At approximately 9:49 p.m. on January 20, 2004 Ms. Vardakis received a telephone call regarding a child, named Ryan, from Staten Island, who had swallowed a pill. A recording of that telephone call was received into evidence. The recording reveals that the child swallowed Tiazic, a 300 milligram calcium channel blocker pill prescribed for high blood pressure. Ms. Vardakis advised the caller that the child needed to be taken to the emergency room immediately. She further advised that this was a serious ingestion and that the child needed to be observed in the emergency room. Furthermore, due to the high dosage, the medication may not peak for several hours and although the child may seem fine, his heart rate and blood pressure could drop. She advised at least five times that the child needed to be brought to the emergency room and at least three times to call for an ambulance. Ms. Vardakis stressed the seriousness of the ingestion and the necessity for the child to be brought to the hospital.
The Respondent did not testify.
ISSUE PRESENTED
This Court determined the following issue: 1) whether the child Ryan L. was neglected by the Respondent's failure to seek medical attention and whether the children, Joseph L. and Amber L., were neglected or in danger of being neglected by the Respondent because of that failure.
 DISCUSSION
Family Court Act § 1012 defines a neglected child as a child less than eighteen years of age
"whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care...in supplying the child with adequate food, clothing, shelter or education in accordance with the provisions of part one of article sixty-five of the education law, or medical, dental, optometrical or surgical care, though financially able to do so or offered financial or other reasonable means to do so". FCA § 1012(f)(i)(A).
A parent has the nondelegable duty to provide their child with adequate medical care. Matter of Hofbauer, 47 N.Y.2d. 648, 393 N.E.2d 1009, 419 N.Y.S.2d 936. The Court of Appeals held in The Matter of Hofbauer that a child is medically neglected where the parents fail to provide an acceptable course of medical treatment "in light of all the surrounding circumstances". Id. at 941.
Furthermore, in order to make a finding of medical neglect there must be a finding that the parent did not seek adequate medical care and that the child has suffered impairment or was in imminent danger thereof. FCA 1012.
It is not uncommon for a young child to be at risk of ingesting a toxic substance. Whether or not the Respondent was neglectful in allowing the child to ingest the Tiazic is not the sole issue presented before this Court. The additional issue is whether the Respondent's failure to seek subsequent adequate medical care resulting in the child's death constituted medical neglect.
The Respondent argues that the child appeared to be fine and did not display any symptoms. However, the Respondent was warned by the poison control specialist that the child may not display [*3]any immediate symptoms due to the nature and dosage of the pill. Further, even though the child initially did not display any symptoms, the Respondent was advised that the child needed to be observed in an emergency room.
It is important to note that Family Court Act § 1012(f)(i)(A) does not require a child to be brought to a physician for every ailment. Matter of Hofbauer, 47 N.Y.2d. 648, 393 N.E.2d 1009, 419 N.Y.S.2d 936. However, the court must consider whether an ordinarily prudent parent would seek medical assistance in the same situation. Id. At 655.
In viewing all the circumstances of this matter, there is no question that the Respondent medically neglected the child. The Respondent discovered the children with an open, chewed tablet and was repeatedly advised that the child needed to be taken to an emergency room. Further, the Respondent was advised that this was a serious ingestion. Further, the Respondent failed to take any action whatsoever. This Court finds that this clearly inadequate response resulted in the death of the child.
 Accordingly, this Court finds that the Respondent has medically neglected the child Ryan L. and makes derivative findings as to the children Joseph L. and Amber L. 
FINDINGS
1.)This Court finds by a fair preponderance of the evidence that the Respondent has medically neglected the children by failing to provide appropriate and adequate medical attention to the child Ryan L.
2.)This Court finds that the children Joseph L. and Amber L. have been derivatively neglected by the Respondent's failure to seek medical attention for their sibling, Ryan L.
DECISION
This Court finds by a fair preponderance of the evidence that the Respondent has medically neglected the child Ryan L. and makes a derivative finding as to the children Joseph L. and Amber L.
This constitutes the decision and order of the Court.
E N T E R:
Ralph J. Porzio
Family Court Judge
Dated: Staten Island, New York
 June 7, 2004